**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>　　　　Plaintiff,<br>　vs.<br>**KEVIN LANEY,**<br>　　　　Defendant. | CASE NO. 12-cr-00862-YGR-3<br><br>**ORDER RE: PAYMENT OF RESTITUTION** |

The Court assumes familiarity with the lengthy procedural history of this criminal action and focuses solely on the facts pertinent to this motion.

On February 27, 2020, this Court sentenced defendant Kevin Laney but reserved its determination regarding restitution to allow the parties to further brief arguments raised in the sentencing memoranda by the defendant. In essence, the question relates to the manner in which a judgment should reflect anticipated offsets of restitution made by other defendants where the victim's harm is greater than the restitution actually owed by one particular defendant.

Accordingly, on April 13, 2020, the government argued in its supplemental memorandum that the Court should issue an order requiring Laney to pay $1,010,503 in restitution with the explicit order that appropriate offsets against total losses suffered by the victim, Matrix Services, Inc., should be applied. The government avers that based on the victim's total loss of $1,379,473 and current offsets of $938,504, no more than $440,969 would be collected from Laney.[1] By contrast, on April 24, 2020, Laney filed a responsive memorandum asking the Court to order

---

[1] Page 5 of the government's memorandum erroneously states that Brandon Hourmouzus has been ordered to pay $194,410 in restitution. Elsewhere, including in Exhibit A to the memorandum, this amount is shown to be $196,410, suggesting the lesser amount was a typographical error. The government confirmed as much at the hearing on the matter. The Court thus has adjusted the government's calculation of offsets and total collections accordingly.

restitution of no more than $71,988.30, comprised of $1,010,503 in actual losses due to Laney's conduct, reduced by $938,514.79 in offsets.[2]

Laney concedes that he owes restitution. This motion does not challenge that Matrix suffered losses in the amount of $1,379,473 or that the amount attributable to Laney is $1,010,503. Rather, two issues present. First, the Court must determine whether offsets should simply be noted for purposes of determining later collections or whether they should be subtracted from the amount of restitution ordered. Second, the Court must determine whether offsets should be applied against Matrix's total losses or only those losses attributable to Laney.

As to the first issue, the Court is guided by the statutory language itself. Section 3664 of the Mandatory Victim Restitution Act ("MVRA") provides that "[i]n each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A). "In no case shall the fact that a victim has received or is entitled to receive compensation with respect to a loss from insurance or any other source be considered in determining the amount of restitution." 18 U.S.C. § 3664(f)(2). In the case of multiple defendants or co-defendants, "the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant." 18 U.S.C. § 3664(h).

---

[2] Although Laney principally argues that this is the proper sum of the offsets, he also suggests the offsets might be higher for two reasons. First, Laney contends that the offsets should include the value of his waived right to sue. However, Laney provides no basis for the Court to calculate this amount, as is his burden. Moreover, the settlement agreement between Laney and Matrix appears to explicitly provide for an offset of $25,000. Dkt. No. 516, Ex. B; *see also United States v. Sheinbaum*, 136 F.3d 443, 449 (5th Cir. 1998) ("[T]he defendants failed to present any evidence to the district court as to the value of the consideration they provided in exchange for the [victim's] release."). Second, Laney argues that Miguel Ibarria's settlement with Matrix, which neither Laney nor the government have, is "likely material to the amount of restitution if any, this Court will order Laney to pay." Because the government hasn't provided the settlement, Laney asks the Court to "assume the Settlement Agreement between Laney and Matrix, and the Settlement Agreement between Ibarria and Matrix, are similarly structured." However, the government's decision to not seek restitution against Ibarria does not impact its ability to seek restitution against Laney, and in any event, the government has presented ample basis to support its decision as to Ibarria.

Section 3664 requires this Court to order restitution "in the full amount of each victim's losses" without consideration for "the fact that a victim *has received or is entitled to receive compensation* with respect to a loss from insurance *or any other source*." 18 U.S.C. § 3664(f)(1)-(2) (emphasis supplied). Given this language, the Court finds it appropriate to order restitution in the full amount of losses attributable to Laney, $1,010,503, with an indication that appropriate offsets shall be applied at the point of collection. Such an order is consistent with explicit plain language of Section 3664. Moreover, because the sum of the offsets is a moving target, increasing as Laney's co-defendants pay restitution, the Court's order allows for Laney to benefit in the appropriate amount as Matrix continues to be compensated for its loss from other sources and does not disadvantage the victim in the event that some post-judgment action may result in a withdrawal of restitution payments.

None of the authority cited persuades otherwise. First, there is no case which contradicts the plain language of the statute. Next, the cases on which Laney relies are distinguishable. Those cases find that restitution may be reduced by profits earned and money or property recovered from a fraudulent scheme.[3] They are consistent with the principle that courts must order restitution in the amount of the *loss* to the victim; if the victim profits from or recovers something of value through the scheme, there is no loss. Here, at issue are traditional *offsets*, including civil settlements and restitution paid by co-defendants, which are separate and apart from the inputs for calculating loss. Likewise, the amount forgone for projects outside the scope of the defendants' scheme represents money Matrix owed Imperial Shotcrete for unrelated projects, which Miguel Ibarria agreed to forego in order to resolve the case. This amount is akin to a settlement or restitution amount, and thus, does not factor into the loss calculation.

*United States v. Bright*, 353 F.3d 1114 (9th Cir. 2004), on which the government relies, supports the textual interpretation. There, the Ninth Circuit examined the MVRA and noted that the statute "directs the court to order restitution in the full amount of a victim's loss, and "[a]ny

---

[3] *See, e.g., United States v. Beecroft*, 825 F.3d 991 (9th Cir. 2016); *United States v. Matsumaru*, 244 F.3d 1092 (9th Cir. 2001); *Robers v. United States*, 572 U.S. 639 (2014); *United States v. Swanson*, 483 F.3d 509 (7th Cir. 2007).

3

1   offsets," including for "other sources of compensation for the victims," are "to be handled

2   separately as potential credits against the defendant's restitution obligation—not as reductions in

3   the amount of that obligation in the first instance." 353 F.3d at 1121.  The word "separate" does

4   connote a distinct event, as opposed to an offset automatically at the time of the restitution order.

5   That said, the *Bright* court did not expound explicitly on when such "credits" should be applied,

6   nor was that issue before the court.[4]  In fact, *Bright* left open the question of whether "offsets

7   might be due when a defendant's funds have been forfeited and paid to the victims." *Id*. at 1122-

8   23.  Instead, the Ninth Circuit held only that "funds the victims have *not* received cannot reduce or

9   offset the amount of losses the defendant is required to repay." *Id*. (emphasis in original).

10       Absent on-point case authority to the contrary, the Court is bound by the language of the

11   statute.

12       As a final point, the Court is not persuaded that such an order will put Laney at a

13   disadvantage if the government later miscalculates the collections.  Although a district court has

14   limited authority to *modify* a judgment once a restitution order is entered, *United States v.*

15   *Hankins*, 858 F.3d 1273, 1277 (9th Cir. 2017), neither party cites authority for the proposition that

16   the Court lacks authority to *enforce* its order.  Any such disagreement can be properly resolved, at

17   the time, by the Court.

18       As to the second issue raised in the parties' brief, the Court must determine whether offsets

19   should be applied against Matrix's total losses ($1,379,473), or against the individual amount of

20   restitution owed by Laney ($1,010,503).

21       Again, the Court begins with the statute itself.  In interpreting Section 3364, the Ninth

22   Circuit has explained that "when other parties have paid civil damages for the same loss for which

23   a defendant is liable, the calculation of the amount of restitution remaining is a two-step process."

24   *United States v. Stanley*, 309 F.3d 611, 613 (9th Cir. 2002).  "First, the court ascertains the full

---

[4] Similarly, Laney cites *United States v. Lomow*, 266 F.3d 1013, 1020-21 (9th Cir. 2001), in which the Ninth Circuit held that the district court erred in declining to offset restitution by the amount recovered in another defendant's civil settlement.  Here, however, the government does not dispute that offsets should be applied.  Rather, the parties disagree as to *when* the offsets should be credited against the restitution amount.

4

amount of the victim's loss." *Id*. Here, the parties agree that loss amounts to $1,379,473. "The court then subtracts the amount paid by the other parties." *Id*. Here, the offsets—comprised of civil settlements paid by others, restitution paid by others, and an amount forgone for projects outside the scope of the defendants' scheme—total $938,514.[5] "What is left is the unpaid portion of the victim's loss," that is, the maximum amount that may be collected from Laney. As the government contends, this amount is $440,969. The maximum amount of restitution Laney could be ordered to pay under the plea agreement, $1,010,503, "does not figure into the equation." *Id*.

The Ninth Circuit's application of these principles in *Stanley* lends considerable support to the government's position in this case. In *Stanley*, like here, a criminal defendant in a kickback scheme argued that his restitution obligation should be reduced by the amount his co-defendants had paid to the victim in settlement of a related civil case. *Id*. The district court declined to follow that approach, instead subtracting the amount of the co-defendants' payments from the victim's total loss. The Ninth Circuit affirmed, holding that the co-defendants' payments had "nothing to do with the cap on restitution that . . . served to limit the defendant's maximum exposure to no more than a certain amount." *Id*.

Laney does not attempt to distinguish *Stanley*. Instead, he simply argues that the government's approach would lead to a windfall for Matrix and/or Laney being held responsible for losses caused by others during crimes in which he did not participate. The Court is not persuaded. Subtracting the offsets from Matrix's total loss prevents double recovery, while noting the corresponding cap on Laney's eventual payments ensures that he will benefit from the offsets to the appropriate extent. Moreover, this approach gives Matrix the greatest chance of fully recovering. In contrast, under Laney's approach, he and his co-defendants could claim the same offsets, multiplying the reduction to Matrix's overall recovery. If one defendant was incapable of

---

[5] While the government proffers that this amount is $938,504, the Court assumes this is a typographical error. The $10 discrepancy appears to derive from a difference in the stated amount of Ibarria's civil settlement. The information filed by Ibarria's counsel in his sentencing memorandum confirms Laney's calculation of the offset amount is correct.

paying his reduced restitution, Matrix could be left with a shortfall even if Laney paid his share of the reduced restitution. Such an outcome would undermine the purposes of the restitution order.

For the foregoing reasons, the Court **ORDERS** as follows:

1. Laney shall pay $1,010,503 in restitution, with appropriate offsets of up to $938,514 to be taken against Matrix's total losses of $1,379,473.

2. Laney's restitution shall be joint and several with that owed by Brian Federico.

3. On supervised release, restitution must be paid in monthly payments of not less than $100 or at least 10 percent of earnings, whichever is greater, to commence no later than 60 days from placement on supervision. Notwithstanding any payment schedule set by the Court, the United States Attorney's Office may pursue collection through all available means in accordance with 18 U.S.C. §§ 3613 and 3644(m). The restitution payments shall be made to the Clerk of U.S. District Court, Attention: Financial Unit, 450 Golden Gate Ave., Box 36060, San Francisco, CA 94102.

**IT IS SO ORDERED.**

Dated: May 26, 2020

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**